NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN R. KRAFT,<br><br>    Plaintiff,<br>v.<br><br>PHELAN HALLINAN DIAMOND &<br>JONES, P.C. a/k/a PHELAN HALLINAN<br>and SCHMIEG, P.C.; PHELAN<br>HALLINAN and SCHMIEG, LLC;<br>ROSEMARIE DIAMOND; FRANCIS S.<br>HALLINAN; LAWRENCE T. PHELAN;<br>and DANIEL G. SCHMIEG,<br><br>    Defendants. | Civil Action No. 3:17-cv-13765-BRM-DEA<br><br><br><br>OPINION |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Phelan Hallinan Diamond & Jones, P.C. a/k/a Phelan Hallinan and Schmieg, P.C. ("Phelan Hallinan"), Phelan Hallinan and Schmieg, L.L.C. ("Phelan Hallinan Schmieg"), Rosemarie Diamond ("Diamond"), Francis S. Hallinan ("Hallinan"), and Lawrence T. Phelan ("Phelan") (collectively "Defendants")[1] seeking to dismiss Plaintiff Warren R. Kraft's ("Kraft" or "Plaintiff") Amended Complaint (the "Amended Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) (ECF No. 28), and Kraft's Motion for Reconsideration of this Court's Order determining the Motion to Dismiss to be fully briefed. (ECF No. 35). Kraft opposed Defendants' Motion to Dismiss. (ECF

---

[1] Defendant Daniel G. Schmieg ("Schmieg") is not represented by Flaster Greenberg, PC, as are the other defendants, and has not filed a Motion to Dismiss. Notwithstanding, at other points in this Opinion, this Court will use the term "Defendants" with the purpose of including Schmieg.

No. 32.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED WITH PREJUDICE** and Kraft's Motion for Reconsideration is **DENIED AS MOOT**.

I. BACKGROUND

A. Factual Background

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).[2] Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Phelan Hallinan is a high-volume mortgage foreclosure law firm with its principal place of business in Philadelphia, Pennsylvania and an office in Mount Laurel, New Jersey. (ECF No. 26 ¶ 15.) Phelan, Hallinan, and Schmieg are each equity partners at Phelan Hallinan whereas Diamond is a managing partner responsible for overseeing the firm's New Jersey operations. (ECF No. 26 ¶¶ 16-19.)[3] On behalf of Phelan Hallinan, Diamond handled the foreclosing proceeding *Washington Mutual Bank, F.A. v. Laura Princiotta*, Docket No. F-17248-06, in the Superior Court of New Jersey, Monmouth County, Chancery Division. (ECF No. 26 ¶ 19.)

---

[2] This Court recognizes that the presumption of truthfulness of the allegations contained in Kraft's Complaint applies only when considering Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). No presumption of truthfulness attaches to a plaintiff's allegations when a defendant moves for dismissal for lack of subject matter jurisdiction. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 509 (3d Cir. 2007).

[3] Defendants Phelan, Hallinan, Schmieg, and Diamond are referred to as the "Phelan Defendants."

At all times relevant to this litigation, Kraft resided at an address in Middletown, New Jersey (the "Premises"). (ECF No. 26 ¶ 25.) Kraft acquired ownership of the Premises by inheritance when his father passed away in 1996. (ECF No. 26 ¶ 26.) The Premises was apparently encumbered by a mortgage, which PNC Mortgage Corporation, the mortgagor, assigned to the Federal National Mortgage Association ("FNMA") on March 3, 1994. (ECF No. 26 ¶ 29.) On September 29, 2006, Washington Mutual N.A. ("Washington Mutual"), a predecessor in interest to Wells Fargo regarding the mortgage on the Premises, commenced a property foreclosure action in the Superior Court of New Jersey against Kraft due to non-payment.[4] (ECF No. 26 ¶ 30.) Wells Fargo acquired the mortgage servicing rights and the mortgage from Washington Mutual after the debt was in default. (ECF No. 26 ¶ 35.) Washington Mutual and Wells Fargo retained Phelan Hallinan as legal counsel to litigate and prosecute the foreclosure action. (ECF No. 26 ¶ 34.)

Kraft contends "Washington Mutual and Wells Fargo never possessed the original note, never owned or controlled the underlying debt, and never obtained a valid assignment of the note" as the original note was lost while in the possession of FNMA. (ECF No. 26 ¶¶ 37-38.)[5] The record in the foreclosure litigation indicates that the original note was lost and never transferred from FNMA to Washington Mutual or Wells Fargo.[6] (ECF No. 26 ¶ 40.) Kraft alleges that Washington

---

[4] This Court interpreted the facts to the best of its ability. The facts are largely disjointed and exceedingly difficult to follow. Often, the Amended Complaint is completely bereft of important connectors between crucial facts. For instance, Kraft fails to specify in which Superior Court this foreclosure action took place and fails entirely to provide any connection between FNMA, Washington Mutual, and Wells Fargo in acquisition of the mortgage.

[5] The note, executed by Raymond Kraft, Kraft's father, and Laura (Princiotta) Kraft ("Princiotta"), Kraft's ex-wife, on February 22, 1994, is provided by the Defendants. (ECF No. 28-4, Ex. B.)

[6] Alex Sims, a Wells Fargo Vice President responsible for the delivery of promissory notes, executed an Affidavit of Lost Note on September 2, 2008 certifying that the promissory note relating to the subject mortgage debt was "lost, never delivered to and never in the possession of Washington Mutual and Wells Fargo." (ECF No. 26 ¶ 41.)

Mutual never obtained a valid assignment of the loan obligation and that during the course of the state foreclosure action, the Phelan Defendants made "repeated and numerous false representations" to the court, including that "Washington Mutual and Wells Fargo obtained a valid assignment of the underlying debt obligation and had legal authority to enforce the note and foreclose [] Kraft's home." (ECF No. 26 ¶¶ 46, 60-61.) On July 24, 2007, a Final Judgment of Foreclosure was entered in favor of Washington Mutual pertaining to the defaulted mortgage on the Premises. (ECF No. 26 ¶ 48.)

Kraft contends that on June 9, 2011, New Jersey Supreme Court Chief Justice Rabner "entered an Order requiring that in all [New Jersey] foreclosure actions where a default judgment has been entered . . . the plaintiff . . . must file with the court and serve on the parties a Plaintiff's Counsel's Certification of Diligent Inquiry" containing "certain information and attesting to the truth, accuracy and authenticity of factual assertions and documents" before a sheriff's sale can occur. (ECF No. 26 ¶ 49.)[7] Caroline Courtney ("Courtney"), Wells Fargo's Vice President of Loan Documentation, executed a Certificate of Diligent Inquiry indicating that she personally reviewed the certification and confirmed the amount due under the mortgage via an Amended Certification of Amount Due. (ECF No. 26 ¶¶ 53-57.) Courtney then conveyed this information to Eric Rochkind ("Rochkind"), legal counsel for the Phelan Defendants. (ECF No. 26 ¶¶ 53, 63.)[8]

Kraft alleges Courtney "never reviewed the original or true copy of the original note" because it was "lost and never transferred" and that as such, Courtney could not "confirm the

---

[7] Kraft does not cite this case or provide this order.

[8] Courtney, Rochkind, and David Rubin, another attorney for the Phelan Defendants, executed certifications in support of a Motion to Amend the Final Judgment and Writ of Execution on the Premises to comply with the Certification of Diligent Inquiry requirements. (ECF No. 26 at 39-43.)

4

accuracy and authenticity of the original promissory note because it was lost." (ECF No. 26 ¶¶ 66-67.) Similarly, Kraft contends Rochkind could not confirm the accuracy of the recorded assignments to Washington Mutual and Wells Fargo because FNMA never transferred or delivered the original note. (ECF No. 26 ¶¶ 68-70.) Accordingly, Kraft claims the "Phelan Defendants chose to proceed with false certifications and false representations of the legal status of the debt to give the false impression of having a legal status it did not enjoy." (ECF No. 26 ¶ 51.)

### B. Procedural History

On December 28, 2017, Kraft filed the Complaint asserting a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p against the Defendants. (ECF No. 1.) On December 29, 2017, summonses were issued to the Defendants. (ECF No. 3.) Because Kraft had not served the Complaint, on April 26, 2018, this Court issued a Notice of Call for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 4.)[9] On May 7, 2018, this Court entered an Order of Dismissal without prejudice pursuant to Rule 4(m). (ECF No. 5.)

On May 14, 2018, Kraft wrote a letter to the Court indicating that Defendants had agreed to waive formal service of process and that he expected waiver forms from Defendants' counsel, Kenneth Goodkind, Esq, which would subsequently be supplied to the Court. (ECF No. 7.) Accordingly, Kraft requested that this Court vacate its May 7, 2018 Order of Dismissal. (*Id.*) On

---

[9] Federal Rule of Civil Procedure 4(m) states, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. Pro. 4(m).

May 17, 2018, Defendants submitted a letter opposing Kraft's request to vacate the Order of Dismissal. (ECF No. 8.) On May 23, 2018, this Court vacated the May 7, 2018 Order of Dismissal and allowed Kraft 45 days from the date of the Order to effectuate service on the Defendants and supply proof thereof. (ECF No. 9.)

On January 16, 2019, Defendants filed a Motion to Dismiss Kraft's Complaint, asserting a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), insufficient service of process pursuant to Rule 12(b)(5), and failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 23.) On February 7, 2019, in apparent response to the Motion to Dismiss, Kraft filed the Amended Complaint against the Defendants asserting a claim for false or misleading representations, in violation of the FDCPA ("Count One") and unfair practices, in violation of the FDCPA ("Count Two"). (ECF No. 26.) On March 4, 2019, Defendants filed a Motion to Dismiss Kraft's Amended Complaint on identical grounds. (ECF No. 28.) On April 1, 2019, Kraft filed an Opposition to Defendants' Motion to Dismiss.

On April 5, 2019, this Court issued a Text Order indicating that it was in receipt of the moving papers pertaining to Defendants' Motion to Dismiss and Kraft's Opposition thereto, and that as such, it considered the matter fully briefed. (ECF No. 34.) On April 18, 2019, Kraft filed a Motion for Reconsideration of this Court's April 5, 2019 Text Order determining the matter to be fully briefed. (ECF No. 35.)[10]

## II. LEGAL STANDARDS

---

[10] On April 18, 2019, simultaneously with his Motion for Reconsideration, Kraft filed a Second Opposition to Defendants' Motion to Dismiss despite this Court's April 5, 2019 Order that the matter is fully briefed. (ECF No. 36.) On April 23, 2019, Defendants filed a letter opposing Kraft's Motion for Reconsideration and urging this Court to *sua sponte* strike Kraft's Second Opposition to Defendants' Motion to Dismiss as it violated the April 5, 2019 Order. (ECF No. 37.) This Court considered Kraft's Second Opposition despite the tardiness of its filing.

### A. Rule 12(b)(1) Standard

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). No presumption of truthfulness is accorded to the plaintiff's allegations. *Atkinson*, 473 F.3d at 509.

When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction." *Id.* "If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." *Id.* Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated. *Symczyk*, 656 F.3d at 191 n.4 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1997)). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *Atkinson*, 473 F.3d at 514.

### B. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted

inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

Defendants argue this Court should dismiss Kraft's Amended Complaint as they were not properly served, the Amended Complaint lacks subject matter jurisdiction, and the Amended Complaint fails to state a claim upon which relief may be granted. (ECF No. 28-1 at 1-4.) Kraft argues that he is a proper plaintiff pursuant to the FDCPA as his case is analogous to those involving water and sewage debt obligations, which qualify as consumer debts pursuant to the FDCPA. (ECF No. 32 at 4-8.) This Court addresses the arguments in turn.

#### A. Service

Pursuant to Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days after a complaint is filed, the court must dismiss the action without prejudice against that defendant, or order that service be made within a specified time. *See* Fed. R. Civ. Pro. 4(m). On April 26, 2018, this Court issued a Notice of Call for dismissal of the Complaint pursuant to Rule 4(m), as Kraft had not served the Complaint upon the Defendants and on May 7, 2018, this Court

9

entered an Order of Dismissal without prejudice pursuant to Rule 4(m). (ECF Nos. 4 & 5.) Thereafter, this Court vacated its dismissal of the case and issued an Order indicating that Kraft has 45 days from the date of the Order, May 23, 2018, within which to effectuate service and file proof of same. (ECF No. 9.)

On July 13, 2018, Kraft requested that summonses be issued to Defendants. (ECF Nos. 12 & 13.) This request was made outside of the court-imposed 45-day deadline, which expired on July 8, 2018. This Court issued a second Notice of Call for dismissal on December 13, 2018 (ECF No. 14), only after which time Kraft requested for summonses to be issued to Defendants. (ECF Nos. 15 & 16.) Accordingly, Kraft did not properly serve the Defendants until December 17, 2018, well past the deadline set by this Court.

Kraft argues that his failure to properly effectuate service was due, in part, to Defendants' failure to cooperate with his requests to have them waive service. (ECF No. 32 at 2.) However, it is the burden of the plaintiff only to ensure that a defendant has been served. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 493 (3d Cir. 1993). Accordingly, Defendants' alleged failure to cooperate with a request for a service waiver does not constitute justifiable excuse for failure to effectuate service. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (holding that "good cause" may excuse late service and that factors to consider in determining whether good cause exists include the reasonableness of the plaintiff's efforts to serve, prejudice caused to defendants, and whether plaintiff moved for an enlargement of time to serve). Therefore, Defendants' Motion to Dismiss for lack of service is **GRANTED**.

### B. FDCPA Claim

Defendants argue even if they had been properly served, Kraft may not proceed under the FDCPA as he is not a proper plaintiff pursuant to the statute. The two-count Amended Complaint

10

asserts violations of Section 1692(e) of the FDCPA, alleging Defendants made false and misleading representations, and Section 1692(f) of the FDCPA, alleging unfair practices. (ECF No. 26 at 12-25.) Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Even when accepting the allegations in the Amended Complaint as fact, Kraft still fails to establish a *prima facie* case of a FDCPA violation, and as such, the Amended Complaint must be dismissed.

Kraft is not a "consumer" for the purposes of the FDCPA. The term "consumer" means "any natural personal obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692(a)(3). To have standing to bring an action pursuant to the FDCPA, a plaintiff must allege that he or she actually owes a debt. *Benali v. AFNI, Inc.*, No. 15-3605, 2017 WL 39558, at *6 (D.N.J. Jan. 4, 2017) (granting summary judgment where a plaintiff testified that the debt owed was not "his"). Here, Kraft has not alleged that he owes any debt. Kraft's deceased father and ex-wife, Princiotta, were the original mortgagors of the mortgage serviced by Washington Mutual and Wells Fargo. (ECF No. 26 ¶ 78.) Kraft alleges he is a "natural person obligated or allegedly obligated to pay the underlying debt of the mortgage" (ECF No. 26 ¶¶ 11, 86, 89), however, he is not one of the original mortgagors, and did not sign the mortgage or promissory note. (ECF No. 26 ¶¶ 66; ECF No. 28-4, Ex. B).

Kraft contends he qualifies as a consumer pursuant to the FDCPA because he is a "homeowner . . . within the purview of the FDCPA as he is a natural person obligated or alleged

to be obligated to pay the aforesaid principal debt . . . incidental to the mortgage because of a covenant that runs with the aforesaid residential property." (ECF No. 26 ¶ 89.) However, even if there were some covenant in the mortgage, such would still be insufficient to establish Kraft as a consumer owing a debt for the purposes of the FDCPA. Actions premised on a mortgagor's promissory note are *in personam*, therefore, in the event of a default, the mortgagee may foreclose on the property to satisfy the debt and should there be a deficiency, may recover personally only against a signatory to the promissory note. *See In re Matter of Estate of Zahn*, 702 A.2d 482, 485-87 (N.J. App. Div. 1997). Kraft does not allege that he signed the promissory note and therefore has not alleged any debt owed by him. Kraft's contention that he is obligated to pay this debt is a merely a bald, conclusory statement which this Court may not consider in ruling on Defendants' Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (holding that "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss").

In further support of his argument that he constitutes a "consumer" pursuant to the FDCPA, Kraft cites *Pollice v. Nat'l Tax Funding*, 225 F.3d 379 (3d Cir. 2000) and *Piper v. Portnoff Law Assocs.*, 396 F.3d 227 (3d Cir. 2005). Both decisions are wholly inapplicable to the issues present in this litigation. In *Pollice*, the Third Circuit held that a homeowner's obligation to pay money to government entities for water and sewer service constituted a debt for the purposes of the FDCPA, and thus they were consumers and proper plaintiffs pursuant to the statute, stating:

> [W]e conclude that homeowners' water and sewer obligations meet the definition of 'debt'; indeed, these obligations constituted 'debts' from the time they initially were owed to the government entities, and they retained that status after their assignment . . . At the time these obligations first arose, homeowners ('consumers' of water and sewer services) had an 'obligation . . . to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services . . . primarily for personal, family, or household purposes.'

*Pollice*, 225 F.3d at 400 (citations omitted)

In *Piper*, the Third Circuit reaffirmed the holding in *Pollice* in confirming that a law firm's efforts to recover money on behalf of its client, a municipality, for delinquent tax and water bills fell within the purview of the FDCPA. *Piper*, 396 F.3d at 233-34. These cases are distinguishable from this matter. Both cases cited by Kraft address water and sewer charges as "debts" under the FDCPA, and do not concern a foreclosure whatsoever, nor whether a non-signatory to a promissory note may be deemed to owe a debt on his or her property. Moreover, *Pollice* explicitly held that a prerequisite to recognizing a plaintiff as an FDCPA consumer is maintaining a debt obligation that arose from a transaction. *Pollice*, 225 F.3d at 400. Here, Kraft has not alleged that he was party to any transaction, nor has he alleged facts indicating that he is liable for any debt. Accordingly, Kraft lacks standing to pursue his claims under the FDCPA. As the Amended Complaint only asserts causes of actions pursuant to the FDCPA, Defendants' Motion to Dismiss is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED WITH PREJUDICE** and Kraft's Motion for Reconsideration is **DENIED AS MOOT** as set forth herein and in the accompanying order.

**Date: July 30, 2019**  */s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
**UNITED STATES DISTRICT JUDGE**